IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANTHONY DARRIS,

    Plaintiff,

v.

CIVIL ACTION NO.: _____

EXPERIAN INFORMATION
SOLUTIONS, INC.; EQUIFAX
INFORMATION SERVICES, LLC; and
TRANS UNION, LLC,

    Defendants.
_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Anthony Darris, by Counsel, and, for cause of action against Defendants Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union, LLC states:

### **PRELIMINARY STATEMENT**

1.    This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681–1681x.

2.    Today in America there are three major consumer reporting agencies ("CRAs"), Defendants Equifax Information Services, LLC, Trans Union, LLC and Experian Information Solutions, Inc.

3.    The FCRA demands of CRAs like Equifax, Experian, and Trans Union that they utilize reasonable procedures to assure the maximum possible

accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

4. CRAs that create consumer reports, like Equifax, Experian, and Trans Union are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for CRAs to simply parrot information they receive from creditors, particularly where a consumer makes a dispute about information reported. Also when a consumer like Plaintiff disputes the accuracy of information through the agencies, those disputes are transmitted to the party furnishing the information. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information it learns to be inaccurate or cannot otherwise verify.

5. Plaintiff brings claims under FCRA Section 1681e(b) against Defendants because they reported about Plaintiff inaccurate information regarding credit accounts. When Plaintiff disputed the inaccuracies, the CRAs did not reasonably investigate, also violating Section 1681i.

6. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, *Supervisory Highlights Consumer Reporting Special Edition* 21 (Issue 14, March 2, 2017). This is particularly true as to how the Defendants

2

have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Defendants have been repeatedly sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what its customer-creditors instruct. Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p.

8. Venue is proper in this District and Division because the Plaintiff is a resident of this District and Defendants transacts business within this District and Division.

## PARTIES

9. Plaintiff Anthony Darris is an adult resident citizen of Orlando, Florida, which is located in the Middle District of Florida. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

10. Defendant Experian Information Solutions, Inc. is an Ohio corporation registered to do business in the State of Florida and which may be served with process upon CT Corporation System, its registered agent for service of process, at 1200 South Pine Island Road, Plantation, FL 33324.

11. Defendant Equifax Information Services, LLC is a Georgia limited liability company registered to do business in the State of Florida and which may

3

be served with process upon Corporation Service Company, its registered agent for service of process, at 1201 Hays Street, Tallahassee, FL 32301-2525.

12. Defendant Trans Union, LLC is a Delaware limited liability company registered to do business in the State of Florida and which may be served with process upon Corporation Service Company, its registered agent for service of process, at 1201 Hays Street, Tallahassee, FL 32301-2525.

13. Each Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and they disburse consumer reports to third parties for monetary compensation.

**FACTUAL ALLEGATIONS**

*Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the Defendants' Creditor-Customers*

14. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. See S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); id. at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a

CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

15. "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

16. Section 1681i(a), on the other, hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through her dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

U.S.C. § 1681i(a)(1)(A).

17. Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed

5

inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

18. It has long been the law that a CRA, such as Defendants, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); Carlisle v. Nat'l Commercial Servs., Inc., No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), report & recommendation adopted, No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

19. That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

20. As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920

(4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

21. Further, as Defendants are aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendant has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." Webster's Third New International Dictionary 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

22. It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

7

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### *Plaintiff Discovers Defendants Was Inaccurately Reporting Accounts On His Credit*

23. Plaintiff learned that the Defendants were reporting inaccurate information on his consumer reports.

24. Specifically, Defendants were reporting that Plaintiff's balance on an account with Comenity/Zales was late when it never was, that he was responsible for a Military Star account that he did not open or authorize anyone to open, and that he made late payments on a Credit Acceptance account when he never did.

25. On February 1, 2023, the Plaintiff wrote individual letters to Defendants Experian, Equifax and Trans Union disputing the Comenity/Zales, Military Star, and Credit Acceptance accounts reporting erroneously on his consumer reports.

26. Upon receipt of the Plaintiff's February 1, 2023 disputes, 15 U.S.C. § 1681i required the Defendants to perform reasonable investigations of the Plaintiff's disputes of the erroneous accounts and, if the Defendants could not verify the accuracy of the disputed information, 15 U.S.C. § 1681i required the Defendants to remove the erroneous information from the Plaintiff's consumer reports.

---

[1] *Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.*

27. The Defendants negligently and/or willfully violated 15 U.S.C. § 1681i by failing to perform reasonable investigations of the Plaintiff's dispute regarding the erroneous accounts.

28. The Defendants' violations of 15 U.S.C. § 1681i caused the erroneous and derogatory information to continue to be reported as part of the Plaintiff's consumer reports, thereby causing damage to the Plaintiff's credit history.

29. On December 4, 2023, the Plaintiff wrote individual letters to Defendants Experian, Equifax and Trans Union again disputing the same multiple accounts reporting erroneously on his consumer reports.

30. Upon receipt of the Plaintiff's December 4, 2023 disputes, 15 U.S.C. § 1681i required the Defendants to perform reasonable investigations of the Plaintiff's disputes of the erroneous accounts and, if the Defendants could not verify the accuracy of the disputed information, 15 U.S.C. § 1681i required the Defendants to remove the erroneous information from the Plaintiff's consumer reports.

31. The Defendants negligently and/or willfully violated 15 U.S.C. § 1681i by failing to perform reasonable investigations of the Plaintiff's dispute regarding the erroneous accounts.

32. The Defendants' violations of 15 U.S.C. § 1681i caused the erroneous and derogatory information to continue to be reported as part of the Plaintiff's consumer reports, thereby causing damage to the Plaintiff's credit history.

33. On January 23, 2024, the Plaintiff placed phone calls to Defendants Experian, Equifax and Trans Union and again disputed multiple accounts reporting erroneously on his consumer reports.

34. Upon receipt of the Plaintiff's January 23, 2024 verbal disputes, 15 U.S.C. § 1681i required the Defendants to perform reasonable investigations of the Plaintiff's disputes of the erroneous accounts and, if the Defendants could not verify the accuracy of the disputed information, 15 U.S.C. § 1681i required the Defendants to remove the erroneous information from the Plaintiff's consumer reports.

***Defendants Did Nothing To Investigate Plaintiff's Disputes***

35. Unknown to the Plaintiff until this lawsuit, it has long been the practice of both Trans Union and Equifax to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendor located overseas. Both these Defendants use the same vendor, previously known as Intelenet Global Services and now as Teleperformace.

36. It has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to an affiliated company, Experian Services Chile, S.S. in Santiago, Chile.[2]

---

[2] Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info*.

37. The CRAs' dispute processing vendor is not hired to perform an actual FCRA investigation. Instead, its sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

38. In fact, the CRA Defendants strongly encourage consumers to make disputes through their online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "Not my account."). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Equifax or Trans Union. It gets sent to Defendants' creditor customer for its sole review and consideration.

39. Here is how it the written mail dispute process actually works: for Equifax, a third-party document processing company in Atlanta maintains several Post Office boxes for receiving consumer mail to Equifax such as disputes, requests for a credit file disclosure or other communication. That mailbox company receives consumer disputes, scans them into a batch of other disputes.

---

*Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). In recent litigation by Plaintiff's Counsel in the Eastern District of Virginia, *Sublett v. Nissan of Richmond, et al.*, No. 3:20-cv-00156 (E.D. Va.), however, Experian presented the supposed third-party Chilean dispute investigator pursuant to Plaintiff's notice of deposition under Rule 30. To the extent Experian would argue here that it cannot produce the Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the theory that no investigation was conducted by the CRA.

40. Trans Union, on the other hand, receives and scans the mail into batches directly out of its facility in Eastern Pennsylvania. Experian's dispute processing simply takes the disputes out of its hands and places them into what Experian has argued is an unrelated third party.

41. Both Equifax and Trans Union then forward the dispute mail batches to the same third-party, Teleperformance, based in Mumbai, India. Teleperformance uses low-wage employees to work quickly to process the consumer dispute letters received from the Atlanta-based mail company, skimming the letters and selecting one of a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits. For example, the most common relevant code is: "01 Not his/her."

42. Teleperformance agents are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

43. Equifax and Trans Union have both taken the position in other litigation that they have no control over the Teleperformance. For example, under oath before another court just this year, Equifax's representative employee testified: "Intelenet has no corporate affiliation with Equifax. Intelenet is not a corporate partner of Equifax. Rather, Intelenet is a company wholly separate from Equifax and is a party to a contract with Equifax wherein Equifax hired Intelenet to assist Equifax with various matters. Neither Mr. Negi nor Mr. Singh

[the dispute processing agents] are employees of Equifax." *Miller v. Equifax Info. Serv.*, No. 4:19-cv-584, ECF 47-1 (M.D. Fl. Sept. 18, 2020). And in its briefing in that same case, Equifax argued "Courts have determined that Intelenet is a separate legal entity, not controlled by a party."

44. Trans Union has taken and succeeded with this same position. *See, e,g.*, *Wilcox v. Servis One, Inc.*, No. 1:19-cv-02545-RDB (D. Md.), ECF 71 (ruling that Trans Union did not have control or the ability to produce for deposition Indian employees of Intelenet).

45. Regardless of whether these statements are correct, both Equifax and Trans Union believe that they cannot direct, control, manage or reliably influence the employees of their third-party Indian outsource vendor.

46. Equifax and Trans Union themselves did not conduct any reinvestigation of Plaintiff's many disputes. Instead, they merely caused them to be removed from their control to be saved within a database by an overseas data-processing vendor.

## CLAIMS FOR RELIEF

47. The Defendants negligently and/or willfully violated 15 U.S.C. § 1681i by failing to perform reasonable investigations of the Plaintiff's dispute regarding the erroneous accounts.

48. The Defendants' violations of 15 U.S.C. § 1681i caused the erroneous and derogatory information to continue to be reported as part of the Plaintiff's consumer reports, thereby causing damage to the Plaintiff's credit history.

49. As a result of the negligent and/or willful violations of the FCRA by Defendants, the erroneous and derogatory information disputed by the Plaintiff continued to be published to third parties as a part of the Plaintiff's consumer reports.

50. 15 U.S.C. § 1681i required the Defendants to perform reasonable investigations of the Plaintiff's disputes of the erroneous information appearing on the Plaintiff's consumer reports. The Defendants negligently and/or willfully violated 15 U.S.C. § 1681i by failing to reasonably investigate the Plaintiff's disputes.

51. 15 U.S.C. § 1681e(b) required Defendants to follow reasonable procedures to assure the maximum possible accuracy of the credit reports they prepare regarding consumers such as the Plaintiff. The Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by reporting the erroneous and derogatory information on the Plaintiff's consumer reports.

52. As a result of the Defendants' negligent and/or willful violations of the Fair Credit Reporting Act, including 15 U.S.C. § 1681e(b) and § 1681i, the Plaintiff has suffered actual damages, including adverse actions and denials of credit.

53. Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, the Defendants' actions in negligently violating the Fair Credit Reporting Act entitle the Plaintiff to recovery of his actual damages as well as attorneys' fees and costs. In addition, the Defendants' actions in willfully violating the Fair Credit Reporting Act entitle the Plaintiff to the recovery of actual damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

54. The Defendants' actions and omissions are evidence of their recklessness, gross negligence, and a wanton disregard for the Plaintiff's rights, personal and financial safety, credit reputation and good name, as well as his emotional well-being.

55. Because of the acts and omissions of the Defendants, the Plaintiff has suffered financial loss, mental anxiety, emotional suffering, physical pain, worry, embarrassment, humiliation, and mental distress. In addition, the Plaintiff has incurred and will continue to incur litigation expenses and post litigation attorneys' fees which, but for the acts and omissions of the Defendants alleged herein, would not have been necessary. Further, the Defendants' acts and omissions were willful, malicious and demonstrative of a reckless disregard for the Plaintiff's rights and well-being.

56. As a result of the Defendants' willful violations of 15 U.S.C. § 1681 *et seq.*, the Plaintiff is entitled to an award of punitive damages from the Defendants.

WHEREFORE PREMISES CONSIDERED, the Plaintiff respectfully demands damages of and from Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC and Trans Union, LLC in an amount to be determined by the jury as actual and compensatory damages, and further demands judgment for punitive damages against each of the Defendants in such amount as the jury may determine appropriate to deter this conduct in the future and as allowed by law, as well as attorneys' fees and litigation expenses.

Respectfully submitted,

**ANTHONY DARRIS, Plaintiff**

By: /s/ *Craig C. Marchiando*
Craig C. Marchiando, Fla. Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23188
(757) 930-3660
(757) 930-3662 fax
craig@clalegal.com

*Attorneys for Plaintiff*